**State of Vermont**
**Superior Court—Environmental Division**

======================================================================
**E N T R Y   R E G A R D I N G   M O T I O N**
======================================================================

**In re Asia Minor Hotel/Resort/Spa**                      **Docket No. 124-9-12 Vtec**
**(Application for cond. use and major site plan approval of multi-faceted commercial project)**

Title:  Motion to Dismiss and Motion to Stay (Filing Nos. 1 & 2)

Filed:  December 27, 2012 (both motions)

Filed By:  Applicant Alpaslan Basdogan

Response in support of both of Applicant's motions filed on 1/14/13 by Town of Manchester

Response in opposition to Applicant's motion and in opposition to Town's response filed on 1/14/13 by Appellant Carol W. duPont


 _X_ Granted (in part)              _X_ Denied (in part)              _X_ Other (in part)


        Carol W. duPont ("Appellant") appeals the Town of Manchester Development Review Board's ("the DRB") grant of a permit to Applicant Alpaslan Basdogan ("Applicant") for the construction of a resort complex ("the Project").  Applicant first moves to dismiss all of the 44[1] questions in Appellant's Revised Statement of Questions,[2] arguing that some are beyond this Court's jurisdiction and that Appellant lacks standing to raise the others.  Applicant additionally moves for a continuance of the court proceedings in this appeal,[3] so that it may be coordinated with any appeals that may result from the upcoming review of Applicant's Act 250 permit application that Applicant has not yet filed with the District 8 Environmental Commission.

        As a preliminary matter, we note that Appellant has organized her 44 questions into nine sections, each of which begins with a bolded question (for example, 1.0) that Appellant terms as a "lead question," followed by additional questions (for example, 1.1, 1.2, etc.).  Applicant moved to dismiss the bolded questions along with what Applicant called those questions' "subparts," a characterization to which Appellant objects.  We use the term "sub-questions" for ease of understanding, but read each question and sub-question as separate and

---

[1]  Appellant states that her questions total 43, but this Court counts 44 questions.

[2]  Significant portions of Appellant's 9-page, single spaced Revised Statement of Questions comprise factual assertions and legal arguments.  These are not appropriate in a statement of questions, the purpose of which is simply to provide a short, plain statement of the issues of which an appellant seeks our review.  See V.R.C.P. 8(a);  V.R.E.C.P. 5(f); In re Frostbite Mine, No. 12-1-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Nov. 3, 2011) (Durkin, J.).

[3]  Applicant uses the term "stay" to refer to putting litigation on hold, but it is the practice of this Court to use the term "continuance" for such situations.  We apply the term "stay" where we are asked to delay the implementation of an act or decision of a decision-making body or to prohibit an applicant from taking actions to further a contested development.

individual questions, as Applicant suggests. We understand the applicable regulations to be the Town of Manchester, Vermont Zoning Ordinance as amended December 2011 ("the Ordinance").

I.　　　**Motion to Dismiss Questions 1.0, 3.0, 5.0, 8.0, and 9.0 and their sub-questions**.

Appellant's Question 1.0 asks, "Should the application be voided by summary judgment because the application is incomplete, and the Development Review Board did not correctly review it under Sections 6.3 and 8.9 of the [Manchester Zoning Ordinance]?" (Revised Statement of Questions at 1, filed Dec. 3, 2012.) Applicant argues that this question and its sub-questions are beyond the subject matter jurisdiction of this Court in this de novo appeal, as the questions challenge the completeness of the application presented to the DRB and the DRB's review of that application. V.R.C.P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. In reviewing such motions, we accept as true all uncontroverted factual allegations and construe them in a light most favorable to the nonmoving party (here, Appellant). Rheaume v. Pallito, 2011 VT 72, ¶ 2 (mem.).

Applicant is correct that we are reviewing the pending appeal de novo, and, accordingly, the DRB's review below is not a proper topic for our review. However, we interpret Applicant's Question 1.0 and its sub-questions as raising the cognizable question of whether the application presented to this Court on appeal is complete under the Ordinance. Thus, we **DENY** Applicant's motion to dismiss Appellant's Questions 1.0.

As with Question 1.0, we find that Appellant's Questions 1.1 and 1.5 raise cognizable issues related to the application that Applicant has presented to this Court on appeal. Accordingly, we **DENY** Applicant's motion to dismiss Questions 1.1 and 1.5.

In contrast, Appellant's Questions 1.2, 1.3, 1.4, 1.6, 1.7, and 1.8 ask this Court to review the adequacy of either application materials presented to the DRB, evidence presented to the DRB, or findings of fact made by the DRB. As these are beyond the scope of our review, we **DISMISS** Applicant's Questions 1.2, 1.3, 1.4, 1.6, 1.7, and 1.8. Our dismissal of these sub-questions, however, does not limit Appellant's right during the trail to challenge the adequacy of the materials or other evidence that Applicant provides to this Court.

Question 3.0 asks this Court to review the noise that the resort will generate under noise standards for "Commercial service businesses such as auto and truck repair." (Revised Statement of Questions at 3, filed Dec. 3, 2012.) Appellant does not allege that this Project qualifies as a "commercial service business," but asserts that this Court should apply those standards nonetheless. This Court does not have the discretion to require one land use to meet standards inapplicable to that use. Because Question 3.0 poses no questions upon which this Court can grant relief, we **DISMISS** Appellant's Question 3.0, including the four paragraphs of inappropriate factual assertions and legal argument that follow it.

Question 5.0 asks whether the Town "should be asked to wait until the state wastewater permit is issued" before approving the Project. (Appellant's Statement of Questions at 5, filed Dec. 3, 2012.) To the extent that this question challenges the sufficiency of evidence before the DRB, it is beyond the scope of our review in this de novo appeal, as this Court reviews the application anew. To the extent that this question might be interpreted as asking whether this Court should "wait until the state wastewater permit is issued" before approving the application, Appellant is again posing the cognizable question of whether the application before this Court is complete. Appellant notes in several portions of the paragraphs that follow her

Question 5 that the Town regulations concerning on-site wastewater treatment systems "has been pre-empted by the state's takeover of this issue." Id. at 6. But appellant then goes on to cite to other Ordinance provisions concerning stormwater and "surface water" runoff, which we understand have not been pre-empted by state law.

To the extent that Appellant, by her Question 5, asks us to specifically prohibit Applicant from presenting her application until her project receives a state waste water permit, we must deny her request, for the simple reason that the Ordinance does not require any applicant to first receive a state wastewater permit. As noted in our analysis above of Appellant's Question 3, we cannot impose a requirement on any applicant when the applicable Ordinance does not give us authority to do so. We therefore **DISMISS** Applicant's Question 5.0 as beyond the scope of the legal issues that the applicable Ordinance provisions allow us to consider in this appeal.

Pursuant to V.R.C.P. 12(f), this Court, upon its own initiative at any time, may strike inappropriate matters from pleadings. In this case, and cognizant of our duty to ensure that proceedings are efficient and fair under V.R.E.C.P. 1, we **STRIKE** the four paragraphs of factual assertions and legal argument that follow Question 5.0 as inappropriate in a Statement of Questions.

Questions 5.1, 5.2, and 5.4 ask whether the application complies with specific portions of the Ordinance, namely sections 3.4.1(A), 6.3.2(4), and 8.9.10(5), respectively. Whether an application complies with a specific provision of an applicable ordinance is properly within the scope of our review, unless the appellant lacks standing to raise the issue. Applicant has not argued that Appellant lacks standing to raise these questions. Thus, we **DENY** Applicant's motion to dismiss Questions 5.1, 5.2, and 5.4.

Question 5.5 challenges the completeness of the application. For the same reasons articulated in our analysis of Question 1.0, we **DENY** Applicant's motion to dismiss Appellant's Question 5.5.

Question 5.3 addresses a hypothetical future alteration to the plans for the Project. Question 8.0 asks this Court to review any future conditions that we may impose on the Project to determine whether those potential conditions result in "material changes to the original application." (Revised Statement of Questions at 9, filed Dec. 3, 2012.) Similarly, Question 9.0 asks this Court to conduct a review based on future, hypothetical conditions that the Court may impose on its grant of a permit for the Project. These Questions do not present this Court with an actual, current case or controversy and are therefore not ripe for review. We **DISMISS** Appellant's Questions 5.3, 8.0, and 9.0.

## II.     Motion to Dismiss Questions 2.0, 4.0, 6.0, and 7.0 for lack of standing.

In ruling on a motion to dismiss a question for lack of standing to raise it, this Court is bound by the well-established legal principle that we review only matters presenting actual cases and controversies. See Agency of Natural Res. v. U.S. Fire Ins. Co., 173 Vt. 302, 306 (2001) (explaining that Vermont courts have adopted the same restriction as federal courts in terms of only hearing cases where actual controversies exist between the parties and thus only allow parties having standing to raise claims in Vermont courts). A prospective appellant whose standing has been challenged must demonstrate to the Court that she does, in fact, meet the requirements for standing. See, e.g., Brod v. Agency of Natural Res., 2007 VT 87, ¶ 9, 182 Vt. 234. The requirements for standing to appeal a decision of a municipal panel are addressed by

statute; therefore, we must ensure that each requirement is met so as not to "judicially expand the class of persons" whom the legislature has authorized to appeal such decisions. In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 7, 188 Vt. 262 (quoting Garzo v. Stowe Bd. of Adjustment, 144 Vt. 298, 302 (1984)).

To have standing to appeal a decision of a municipal panel, a prospective appellant must demonstrate that she qualifies as an "interested person" under one of the categories defined in 24 V.S.A. § 4465(b). See 24 V.S.A. § 4471(a) (authorizing an "interested person who has participated in a municipal regulatory proceeding" to appeal "a decision rendered in that proceeding by an appropriate municipal panel"). Here, Appellant must (1) "own[] or occupy[] property in the immediate neighborhood of a property" subject to the DRB's decision; 2) "demonstrate a physical or environmental impact on [her] interest under the criteria reviewed"; and 3) "allege[] that the decision . . . if confirmed, will not be in accord with the policies, purposes, or terms" of the relevant town plan or bylaws. See 24 V.S.A. § 4465(b)(3).

Applicant acknowledges—and this Court agrees—that Appellant has fulfilled the first and third requirements. Thus, to survive Applicant's motion to dismiss for lack of standing, Appellant must only demonstrate a reasonable possibility that the Project will have a physical or environmental impact on her interest under the criteria reviewed. See In re Goddard College Conditional Use, No. 175-12-11 Vtec, slip op. at 2-3 (Vt. Super. Ct. Envtl. Div. Jul. 5, 2012) (Walsh, J.). For a similar standing analysis in the context of Act 250 land use proceedings, see In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.) (litigants seeking party status "must at least state [that] their fears and concerns have some factual basis and are not based solely on speculation").

Question 2.0 and its four sub-questions pertain to lighting and illumination requirements in the Ordinance. Applicant contends that the location of Appellant's property makes any potential physical or environmental impact from lighting a virtual impossibility. Appellant, however, asserts that Applicant's analysis is based on an incorrect positioning of the location of her house. According to Appellant's analysis of maps that she claims depict the correct location of her house, Appellant contends that light from the Project will reach her property and cause negative impacts. For the purposes of surviving a motion to dismiss, these allegations are sufficient to demonstrate a reasonable possibility that the proposed lighting may impact Appellant in contravention of provisions of the Ordinance. Thus, we **DENY** Applicant's motion to dismiss Questions 2.0, 2.1, 2.2, 2.3, and 2.4. In so ruling, we do not find that such an impact will occur; rather, the issue remains to be resolved at trial so that the parties may then present relevant evidence. Additionally, we **STRIKE** the three paragraphs of factual assertions and legal argument that follow Question 2.0 as inappropriate in a Statement of Questions.

Question 4.0 and its eight sub-questions relate to pathways between buildings, adequate pedestrian access, safe road access, and parking lot configuration. Applicant argues that these elements will not impact Appellant, who lives on Village View Road, because "there is no pedestrian or vehicular access between the Project and Village View Road, and vehicular access to Appellant's neighborhood is by way of a route completely different than the segment of Vermont Route 7A serving the Project." (Applicant's Mot. to Dismiss at 5, filed Dec. 27, 2012). Applicant did not propose—nor did the DRB approve or require—a pedestrian or vehicular access between the Project and Village View Road. Nevertheless, Appellant appears to argue that the Ordinance requires Applicant to build such an access way, that Applicant will build the access way, and that guests at the resort will traverse this access way, travel over Village View

Road, and ultimately trespass on Appellant's property.[4]  Additionally, Appellant argues that her travels often take her past the Project's proposed entrance on Route 7, because in order to travel north, she generally takes Village View Road to Barnumville Road, to Canterbury Road, to Route 7A.  Appellant's claims do not raise any reasonable possibility of a particularized physical or environmental impact on her property interest under the Ordinance provisions that Appellant cites in Question 4.0 and its eight sub-questions.  Accordingly, we **DISMISS** Appellant's Questions 4.0, 4.1, 42, 4.3, 4.4, 4.5, 4.6, 4.7, and 4.8.

Appellant's Questions 6.0–6.9 and 7.0 and 7.1 relate to landscaping, screening, and the character of the area.  Applicant contends that the location of Appellant's house precludes any possibility of a physical or environmental interest under the criteria outlined in Questions 6.0–6.9 and 7.0 and 7.1.  Appellant, however, asserts that Applicant's analysis is based on an incorrect positioning of the location of her house.  According to Appellant's analysis of maps that she claims depict the correct location of her house, Appellant contends that the obstacles that Applicant alleges to exist do not preclude a physical or environmental impact.  To the contrary, she claims that a drop in elevation increases her exposure to the Property.  Applicant did not reply to these claims.  Without ruling on the merits of Appellant's claims regarding the potential physical of environmental impact of landscaping, we conclude that her argument is sufficient under the circumstances to enable her Question 6.0 and its subparts and Questions 7.0 and 7.1 to survive a motion to dismiss.  Accordingly, we **DENY** Applicant's motion to dismiss Questions 6.0–6.9, 7.0, and 7.1.  Additionally, we **STRIKE** the four paragraphs of factual assertions and legal argument that follow Question 6.0 and the three paragraphs that follow Question 7.0 as inappropriate in a Statement of Questions.

To summarize, we **DISMISS** Appellant's Questions 1.2-1.4 and 1.6-1.8; Question 3.0, including the four paragraphs that follow it; Questions 4.0-4.8; Questions 5.0and 5.3; Question 8.0; and Question 9.0.  Additionally, we **STIRKE** the three paragraphs that follow Question 2.0; the four paragraphs that follow Question 5.0; the four paragraphs that follow Question 6.0; and the three paragraphs that follow Question 7.0.

Remaining for our review are Appellant's Questions 1.0, 1.1, 1.5; Questions 2.0–2.4; Questions 5.1, 5.2, 5.4, 5.5; Questions 6.0–6.9; and Questions 7.0–7.1.

### III.    Motion for a Continuance of Proceedings

Applicant additionally moves to continue this proceeding so that it may be consolidated with any appeals arising from the upcoming Act 250 review proceedings.  Appellant opposes this motion.

Where the same project involves "multiple proceedings that have resulted or may result in separate hearings or appeals," this Court has broad discretion to "advance, defer, coordinate, or combine proceedings and may make other orders that will promote expeditious and fair proceedings and avoid unnecessary costs or delay."  V.R.E.C.P. 2(b).  Although Appellant alleges that resolution of the questions she now poses would clarify the scope of the project that Applicant will present to the District 8 Environmental Commission, we agree with the arguments presented by Applicant and by the Town that a continuance under the facts and

---

[4]  Additionally, Appellant states that, "The easy access to her property poses the threat of incidents where strangers would be attacked by her dog, who is a good watch dog and very protective with respect to strangers."  (Appellant's Resp. to Applicant's Mot. to Dismiss at 6, filed Jan. 14, 2013.)  We note that the state legislature does not take threats posed by vicious animals lightly.  See 20 V.S.A. § 3546.

circumstances of this case would provide a more efficient and fair resolution of the issues than separate proceedings.

Thus, we **GRANT** Applicant's motion for a continuance of this appeal, conditioned on Applicant filing her Act 250 application within 30 days of this Entry Order. If Applicant fails to do so, we will proceed to trial on the instant municipal appeal. We direct Applicant's attorney to immediately notify this Court of when Applicant submits its application to the District Commission and when the District Commission deems the application complete. Applicant's attorney shall also notify the Court when the District Commission renders interim or final determinations on the pending Act 250 application. Applicant's attorney shall also serve Appellant with copies of all notices sent to the Court.

| | |
|---|---|
| _____ | _____June 4, 2012_____ |
| Thomas S. Durkin, Judge | Date |

==========================================================================

Date copies sent to: _____　　　　　　　　　　Clerk's Initials _____

Copies sent to:

　Appellant Carol W. duPont

　Christopher Roy, Attorney for Applicant-Appellee Alpaslan Basdogan

　Robert E. Woolmington, Attorney for Town of Manchester.